IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, | : | |
| SALES PRACTICES AND PRODUCTS LIABILITY | : | 2284 |
| LITIGATION | : | MDL No. ~~2884~~ |
| | : | 11-md-0~~2884~~ |
| | : | 2284 |
| _____ | : | |
| | : | |
| THIS DOCUMENT APPLIES TO: | : | |
| ALL ACTIONS | : | |
| | : | |

## MEMORANDUM

PRATTER, J.                                          DECEMBER ⬩, 2014

Defendant DuPont has filed three motions seeking to enforce the Class Action Settlement

in this multidistrict litigation against parties who, DuPont claims, failed to opt out of the

Settlement but continue to pursue lawsuits against DuPont, to wit, Michael and Judith Stovall,

Eric Greener, and William and Beth Depietri.  Two of the motions seek an injunction barring

state court law suits, and the third moves to dismiss a claim that was originally filed in state court

but later removed to federal court and transferred to this Court.  After considering the parties'

written submissions and hearing oral argument on November 6, 2014, the Court will grant all

three of DuPont's motions.

BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the

following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively

kill unwanted weeds without harming non-target vegetation.  After widespread reports of

damage to non-target vegetation, the EPA began investigating Imprelis, leading to lawsuits, a

suspension of Imprelis sales, and an EPA order preventing DuPont from selling Imprelis. In

September 2011, DuPont started its own Claim Resolution Process to compensate victims of

Imprelis damage. Despite this voluntary process, Plaintiffs continued to pursue their lawsuits,

alleging consumer fraud/protection act violations, breach of express and/or implied warranty,

negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous

states. After months of settlement discussions, including mediation, the parties came to a

settlement agreement. The details of the settlement relevant to the instant motions will be

discussed in greater detail below.

### A. The Settlement

The Imprelis Class Action Settlement covers three classes of Imprelis Plaintiffs. Among

the three settlement classes is a property owner class, to which, DuPont argues, the Stovalls, the

Depietris, and Mr. Greener belong. That class includes all persons or entities who own or owned

property in the United States to which Imprelis was applied from August 31, 2010 through

August 21, 2011. Under the Settlement, property owner class members who filed claims by the

claims deadline would receive tree removal (or compensation for tree removal), payments for

replacement trees, tree care and maintenance payments, and a 15% payment for incidental

damages. The Settlement included a warranty that provided for all benefits but the 15%

incidental damages award for Imprelis damage that manifested after the claims period closed but

before May 31, 2015. On February 12, 2013, this Court preliminarily approved the Settlement,

and specifically ordered that:

> Any Settlement Class Member may opt out of the Settlement by following the
> "Exclusion" procedure set forth in the Long Form Notice and the Settlement
> Agreement. All Settlement Class Members who do not opt out in accordance with
> the terms set forth in the Settlement Notice and the Settlement Agreement will be
> bound by all determinations and judgments in the Action. Any Class Member who
> wishes to opt out of the Class must do so in writing by mailing a request for exclusion

> to the Claims Administrator.  Any such request must be postmarked no later than the
> Opt-Out Deadline, June 28, 2013.  The request to opt out must be signed by the Class
> Member seeking to opt out and must set out the Class Member's first and last names
> (or company name), valid mailing address and functioning telephone number.

February 12, 2013 Order, Docket No. 160, ¶ 8.  The Settlement itself provided that DuPont could

terminate the agreement if "in its sole discretion, DuPont believe[d] that the number of Opt-Outs

was unsatisfactory."  *See* Settlement Agreement and Release, Docket No. 118-1, § IX.A.

On September 27, 2013, the Court held a Final Fairness Hearing to determine whether the

Settlement provided fair, reasonable, and adequate compensation to class members.  At the

hearing, counsel for Class Plaintiffs, supported by DuPont, stated that any potential class

members who expressed an intention to opt out should have their intention honored.  *See* Sept.

27, 2013 Tr., 11:17-24 ("Mr. Selbin:  Our view – and I think it's shared by DuPont, is that if

someone tries to opt out, that attempt should be honored, if they expressed a desire not to be

bound by the settlement.  And I believe that's DuPont's view, as well.  Mr. Hoeflich [on behalf

of DuPont]:  That is correct, Your Honor.").  The Court also heard from a handful of objectors,

including Objector Ray Majcher, who offered a presentation focused largely on his concern that

Imprelis would harm his heavily wooded property long after the warranty expires.  In granting

final approval, the Court specifically addressed Mr. Majcher's objections and observed that the

warranty, which was among the most hotly contested issues involved in the settlement

negotiations, was supported by Plaintiffs' experts, who opined that a warranty of the length

agreed upon under the Settlement would be sufficient to cover all Imprelis-related damage.  *In re*

*Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig. (Imprelis-Final Approval),* 296

F.R.D. 351, 366-67 (E.D. Pa. 2013).

On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval

of the Settlement.  In so doing, the Court found that the notice program, which included direct

3

mail to all identified class members (those who had submitted claims to DuPont), as well as publication in print,[1] online,[2] and on television,[3] was "comprehensive" and the "best notice practicable under the circumstances." *Id.* at 363.

The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11. Attached to that Order was a list of all parties who had opted out of the Settlement. None of the parties involved in the three motions now pending before this Court are listed in that attachment. *See id.* at Ex. A.

### B. The Parties in Question

#### 1. The Stovalls

On August 13, 2013, an attorney for Michael and Judith Stovall sent an email to DuPont stating that the Stovalls had an Imprelis claim, that they intended to file a writ of summons to

---

[1]       The print advertisements appeared in widely circulated publications like *Parade*, *People*, *Better Homes and Gardens*, *Time*, and others geared toward adults age 35 and over.

[2]       Online advertisements appeared on AOL, Facebook, Yahoo!, Google, and other sites.

[3]       Commercials appeared at a variety of times of day in 46 targeted Market Areas throughout the United States.

protect their claim from the statute of limitations bar, and that they were interested in settling their claim.[4]  Two days later, they filed the writ of summons in the Westmoreland County Court of Common Pleas in Pennsylvania.  No mention was made in their communication with DuPont of the Class Action Settlement, or a desire to opt out of the Settlement.  After receiving no response from DuPont, the Stovalls filed a Complaint against DuPont and Superior Lawn Care, the Stovalls' lawn care operator (LCO), in state court on February 27, 2014.  DuPont removed that case to federal court, whereupon it was transferred to this MDL.  The Court granted the Stovalls' motion to remand, holding that there was not complete diversity between the parties because the LCO, a Pennsylvania company, was not fraudulently joined.  No one raised any arguments based on the preclusive effect of the Class Action Settlement in the motion to remand briefing.

     *2.*     *The Depietris*

In September 2013, William and Beth Depietri first noticed damage to trees on their property which, after some investigation, they believe was caused by Imprelis.  In October, 2013, after discovering that it was too late to join in or opt out of the Class Action Settlement, they sent a letter to DuPont describing the damage to their trees.  They received no response.  The Depietris then filed an Imprelis action in New Hampshire state court on April 3, 2014.  DuPont removed the case to federal court, and the case was transferred to this MDL, where it remains pending.

     *3.*     *Mr. Greener*

Eric Greener received a Long Form Notice of the Settlement in late March, 2013.  It is undisputed that Mr. Greener never sent an opt-out letter to the address specified in the Long

---

[4]     That email was sent to an email address associated with Stericycle, a firm involved in DuPont's claims process.

5

Form Notice. However, on June 11, 2013, a few weeks before the opt-out deadline, Mr. Greener sent a letter to DuPont via an address he had been using to correspond with DuPont regarding the Claims Resolution Process. The focus of that letter was on Mr. Greener's objections to the offer DuPont made to him pursuant to the Claims Resolution Process, but he also stated that "[a]fter consulting with an attorney, our preference is not to take any legal action against Dupont or [the lawn care company], not to join in any class action lawsuit, and to resolve this as quickly as possible." Later, unsatisfied with the outcome of his negotiations with DuPont, Mr. Greener filed an action against DuPont in Conciliation Court in Minnesota on March 21, 2014. DuPont responded to that action by arguing that Mr. Greener's claim was barred by the Class Action Settlement, and Mr. Greener's claim was dismissed. Mr. Greener then appealed, and that appeal remains pending.

The common thread in each of these matters is that, at least according to DuPont, none of these plaintiffs properly opted out of the class settlement. Thus, DuPont has now moved to dismiss (as to the Depietris) or to enjoin state court proceedings under the All Writs Act (as to the Stovalls and Mr. Greener), arguing that the Class Action Settlement in this matter precludes their claims.

**LEGAL STANDARD**

### *A. Motions for Injunctions*

The All Writs Act, 28 U.S.C. § 1651, allows federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That sweeping power is limited by the Anti-Injunction Act, which prohibits courts from issuing injunctions having the effect of staying proceedings in state courts except "as expressly

authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or
effectuate its judgments." 28 U.S.C. § 2283.

### B. *Motion to Dismiss*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8
of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim
showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the
plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough
to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is
not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to
cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation
and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a
context-dependent exercise" because "[s]ome claims require more factual explication than others
to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85,
98 (3d Cir. 2010).

DISCUSSION

### A. *The Stovalls*

DuPont moves to enjoin the Stovalls' state court litigation pursuant to the All Writs Act. The Stovalls argue that the Anti-Injunction Act precludes this, claiming that neither the prong allowing an exception when an injunction is "necessary in aid of [the Court's] jurisdiction," nor the prong allowing an exception to "protect or effectuate [the Court's] judgments" (the "relitigation exception") should apply here. They argue that because the Court has already ruled that it does not have subject matter jurisdiction over their case, the Court does not have jurisdiction to decide whether the Stovalls are class members and therefore foreclosed from bringing suit. Likewise, they argue that the Class Action Settlement has no preclusive effect as to them because they have never had a "full and fair opportunity" to litigate the issue of whether or not they are class members.

The Court will begin with the well-established rule that "[t]here is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Bank of Richmond*, 467 U.S. 867, 874 (1984). In other MDL proceedings in which class action settlements were approved or in which settlement approval was imminent, courts in this Circuit have enjoined class members from proceeding in state court under the latter two exceptions to the Anti-Injunction Act, as allowing the class members to violate the court's final settlement orders by bringing individual state suits would interfere with the court's jurisdiction over the settlement and allow attempts to disturb the court's final judgment. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-Lowe)*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding district court's injunction prohibiting litigation of claims in state court to the extent they were

related to those settled in a class action settlement); *In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-La Marra)*, 314 F.3d 99 (3d Cir. 2002) (upholding injunction prohibiting litigation of issues relating to settlement in state court but reversing retention of jurisdiction in improperly removed case; court had jurisdiction to issue injunction under the pending MDL, whether or not the state claims were removed); *In re Am. Investors Life Ins. Co. Annuity Marketing & Sales Practices Litig.*, 715 F. Supp. 2d 610 (E.D. Pa. 2010) (enjoining, under both the "necessary in aid of its jurisdiction" and "to protect or effectuate its judgments" prongs of the Anti-Injunction Act, state court litigation in which plaintiff attempted to litigate claims released in MDL class action settlement).

According to the Third Circuit Court of Appeals, the Court need not have subject matter jurisdiction over a state court action to enjoin it from proceeding. *See Prudential-Lowe*, 261 F.3d at 366 (noting that "[a] federal court may release claims over which it has no subject matter jurisdiction if the state claims arise from the same nucleus of operative facts as the claims properly before it."). Indeed, in *Prudential-La Marra*, 314 F.3d at 105, the Third Circuit Court of Appeals held that the district court should not have denied a motion to remand *and*, at the same time, that the district court had jurisdiction to issue an injunction prohibiting state court proceedings that implicated a final settlement order "under the court's jurisdiction" in the multidistrict litigation, regardless of whether the Court had subject matter jurisdiction over the individual action. Thus, the Stovalls' arguments attaching some significance to the Court's remand of their action are unavailing. Indeed, the Stovalls cite to no case law that would divest this Court of the power to decide whether they are class members in a Class Action Settlement over which this Court has explicitly retained jurisdiction and to enforce that judgment against them.

The Stovalls also argue that they should be deemed to have opted out of the Class Action Settlement because their counsel sent an email to DuPont indicating a desire to settle their claims and filed a writ of summons in Pennsylvania state court after the opt-out deadline but before the Final Fairness Hearing. They claim that these contacts with DuPont gave notice to DuPont of their intention to opt out of the Class Action Settlement, and they attach significance to DuPont's failure to respond to their communications, as well as DuPont's willingness, as expressed at the Final Fairness Hearing, to honor the intentions of other parties who attempted to opt out, but failed to comply with the formalities required.

The Stovalls cite no case law supporting the idea that merely stating a desire to settle a claim and mentioning the possibility of filing a lawsuit at some unspecified time in the future is an effective means of opting out of a class action settlement. At most, the Stovalls' communications with DuPont demonstrate a supposed unawareness of the Class Action Settlement and the procedures relating to that Settlement, rather than a desire to opt out of the Settlement. In this case, with a comprehensive notice program and parties who had legal representation, ignorance is not an excuse for failing to follow the Court's clearly outlined opt-out procedures. Thus, the Court finds that the Stovalls did not effectively opt out of the Class Action Settlement.

Because the Stovalls are class members, the Court will enjoin them from proceeding in state court on their Imprelis claims for the same reasons other courts in this Circuit have enjoined proceedings in similar MDL actions – allowing the Stovalls and/or others to violate the Court's final settlement orders by bringing individual state suits asserting Imprelis claims would interfere with the Court's jurisdiction over the settlement and would encourage attempts to disturb the Court's final judgment. As the Third Circuit Court of Appeals has observed, allowing plaintiffs

10

to essentially relitigate settled claims "would seriously undermine the possibility for settling any large, multi district class action." *Prudential-Lowe*, 261 F.3d at 367.

### B. Mr. Greener

DuPont also seeks to enjoin Mr. Greener's state court litigation. Mr. Greener did not filed a formal response to the motion seeking an injunction of the proceedings he initiated in Minnesota state court. He did, however, send a letter and attach his Minnesota lawyer's response to DuPont's motion to dismiss in the Minnesota action, and those documents are filed on the docket. Mr. Greener's primary contention is that he properly opted out of the Class Action Settlement; he does not argue that he should not be enjoined from continuing his suit in state court should the Court find that he is a Class Member. As noted above, Mr. Greener received a Long Form Notice of the Settlement in late March, 2013, he never sent an opt out letter to the address specified in the Notice, and prior to the opt out deadline, he did send a letter to DuPont objecting to the offer DuPont extended to him pursuant to the Claims Resolution Process and stating that "[a]fter consulting with an attorney, our preference is not to take any legal action against Dupont or [the lawn care company], not to join in any class action lawsuit, and to resolve this as quickly as possible." Thus, the question is whether this statement, in a letter discussing DuPont's offer to Mr. Greener through the Claims Resolution Process, is sufficient to signal sufficiently that Mr. Greener intended to opt out of the Class Action Settlement.

Mr. Greener cites a few cases from other jurisdictions in which courts held that a failure to follow the precise opt-out procedures is not fatal to plaintiffs' arguments that they successfully opted out of a class action settlement, but none of those cases are close to this case to be useful. In one of those cases, an unequivocal opt out letter was sent to the wrong address. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 216 (N.D. Ill. 1997). In the

other, the parties filed lawsuits during the opt-out period. *See McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 69 (N.D. Cal. 1976).[5] Neither situation resembles the facts here, where Mr. Greener sent a letter to DuPont regarding the Claims Resolution Process and included one sentence that arguably gave a peek at a possible desire to opt out of the Settlement. The sentence upon which Mr. Greener relies does not clearly express an intention to opt out. Mr. Greener's statement that he did not wish to participate in a class action lawsuit, given its context, could be read simply as a desire not to get involved with the legal system, especially since Mr. Greener said in the same sentence that he did not wish to take legal action against DuPont. Moreover, the Claims Resolution Process is the very process through which Class Members pursue their claims against DuPont, and Mr. Greener's letter was a continuation of negotiations within that process with an expression of a desire to continue with that process. Because Mr. Greener's intentions, as expressed in his June 11, 2013 letter, were far from clear, and because he certainly had timely notice of how to opt out of the Class Action Settlement had he wished to do so, the Court holds that Mr. Greener did not opt out of the Class Action Settlement. As with the Stovalls, the Court will enjoin Mr. Greener from proceeding in state court with his Imprelis-related claims.

### C. The Depietris

Because the Depietris' suit is pending before this Court, DuPont has moved to dismiss their claims as barred by the Class Action Settlement. The main issue the Depietris raise in opposition to DuPont's motion to dismiss is that the damage to their trees did not appear until

---

[5] The *McCubbrey* court also allowed parties to opt out when they had lawsuits pending that were filed before the notice period began and the class action settlement notice was defective, in that it did not warn those parties with pending lawsuits that the pendency of those suits was not enough to signal an intention to opt out. *McCubbrey*, 71 F.R.D. at 67-69. That situation bears no resemblance to the one here, in that Mr. Greener did not file his suit until well after the opt-out period ended, and the Notice in this case was not defective.

well after the opt out period ran out, which meant that they could not opt out of the Settlement and are now only entitled to receive payment pursuant to the warranty provision of the Settlement. They posit that the climate in New Hampshire led to later-manifesting damage and point to one other New Hampshire claimant who did not file a settlement claim until September 2013. The Depietris claim that the warranty provisions are inadequate and do not provide them with the relief afforded to other class members, and that therefore it would inequitable and a violation of due process not to allow them to pursue their claims in litigation. They cite to cases in which plaintiffs who discovered their injuries later were allowed to file suit because the earlier class action settlement did not provide for any compensation for those late-discovered injuries, which meant that those plaintiffs were not adequately represented in the settlement process. *See, e.g., Stephenson v. Dow Chemical Co.*, 273 F.3d 249 (2d Cir. 2001).[6] The Depietris also claim that the only other known New Hampshire resident with Imprelis damage failed to see the damage until the summer of 2013, which suggests that Imprelis damage manifested itself later in New Hampshire than elsewhere in the country.

DuPont argues first that "[n]o collateral review is available when class members have had a full and fair hearing and have generally had their procedural rights protected during the approval of the Settlement Agreement. Collateral review is only available when class members are raising an issue that was not properly considered by the District Court at an earlier stage in the litigation." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 431 F.3d 141, 146 (3d Cir. 2005). It further argues that, even if a collateral attack on the Settlement were permitted, this case is unlike the ones cited by the Depietris, in that they are not

---

[6] DuPont points out that the Third Circuit Court of Appeals has expressly rejected *Stephenson, see In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 431 F.3d 141, 146 (3d Cir. 2005) (holding that in this Circuit, "challenges to the terms of a settlement agreement, itself, are not appropriate for collateral review"). *Stephenson* was affirmed in part in a *per curiam* opinion by an equally divided Supreme Court. *See Dow Chemical v. Stephenson*, 539 U.S. 111 (2003).

13

without compensation – indeed, if they can establish that Imprelis caused damage to their trees, they may be entitled to all compensation available to claimants who filed during the claims period, with the exception of the receipt of the 15% additional payment. DuPont notes that, to the extent the adequacy of representation in the class proceedings is challenged, the warranty provisions that protect later claimants like the Depietris were among the most vigorously contested provisions in the Settlement. It observes that the Court already considered the issue of late-appearing damage when some objectors squarely raised that question. DuPont also expressed skepticism that this late-discovered damage really is Imprelis-related, noting that in other cold weather states, like Wisconsin, Imprelis damage appeared far earlier, and pointing out that although the other New Hampshire resident identified by the Depietris did file a claim in September 2013, his trees showed injuries in the summer of 2012.

The Court agrees with DuPont that the Depietris' opposition to the motion to dismiss is unavailing. First, the Court has already thoroughly examined and approved of the Class Action Settlement, including, as discussed above, the warranty provisions, and the Depietris may not now challenge those issues that have already been litigated. *See In re Diet Drugs*, 431 F.3d at 146. Second, even if *Stephenson* were applicable here, the Depietris are not without compensation – should they be able to show that Imprelis damaged their trees and that, as they claim, the damage first manifested after the claims deadlines had passed, the warranty provisions of the Class Action Settlement entitle them to nearly all of the compensation available to other class members, including tree care, removal, and replacement. Because their claims are therefore barred by the Class Action Settlement, the Depietris' Complaint will be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court will grant DuPont's motions.  An appropriate Order
follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge